UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

SEMAJ SMITH,

              Petitioner,

      v.

UNITED STATES OF AMERICA,

              Respondent.

**MEMORANDUM & ORDER**
25-CV-07192 (HG)
20-CR-00260 (HG-2)

**HECTOR GONZALEZ**, United States District Judge:

On October 10, 2023, Petitioner Semaj Smith pled guilty before this Court to racketeering conspiracy in violation of 18 U.S.C. § 1962(d) and brandishing a firearm during a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(ii).  ECF No. 162-1 ¶ 1 ("Plea Agreement").[1]  Following the entry of his plea, the Court sentenced Petitioner to 132 months in prison.  *See* ECF No. 155 (Criminal Judgment).  On March 4, 2025, Petitioner, proceeding *pro se*, moved to vacate or set aside his § 924(c) conviction and sentence under 28 U.S.C. § 2255 ("Section 2255"), arguing that he is actually innocent, as he neither physically nor constructively possessed a firearm and did not intend to injure the victim.  ECF No. 158 (Motion to Vacate).  Petitioner also argues that his § 924(c) conviction is not based on a valid predicate crime of violence.  *Id.*  The government opposes the petition.  *See* ECF No. 162 (Government Opposition).  For the reasons discussed below, Petitioner's motion is DENIED.

---

[1]     Unless otherwise indicated, when quoting cases and the parties' papers, the Court omits all internal quotation marks, alteration marks, emphases, footnotes, and citations.  The Court refers to the pages assigned by the Electronic Case Files system ("ECF").

## BACKGROUND

Petitioner stipulated to the following facts in his Plea Agreement and during the plea allocution.  Between January 2015 and December 2018, Petitioner, who was a member of Brooklyn-based gang Real Ryte, conspired to participate in the gang's racketeering activity.  Plea Agreement ¶ 2; ECF No. 110 at 39 (Plea Hearing Transcript; "Plea Tr."); ECF No. 116 ¶ 7 (Presentence Investigation Report; "PSR").  In connection with his gang activity, Petitioner agreed to assist in an attempted murder.  Plea Tr. at 39; Plea Agreement ¶ 2.  To that end, Petitioner borrowed a rental car, and on January 3, 2017, he drove the car to Brooklyn to meet a fellow Real Ryte member and a Real Ryte associate, both of whom were armed.  PSR ¶¶ 7, 12; Plea Tr. at 39–40.  Petitioner then moved to the back seat of the car, and the other Real Ryte member drove the three of them from Brooklyn to Manhattan.  PSR ¶¶ 7, 12; Plea Tr. at 40.  Petitioner knew that the reason for the drive was to shoot someone, and indeed, the Real Ryte associate shot and injured a bystander after misidentifying that person as the intended target.  Plea Tr. at 40; PSR ¶¶ 12–13; Plea Agreement ¶ 2; ECF No. 64 ¶ 17 (Superseding Indictment).

On October 10, 2023, Petitioner pled guilty pursuant to the Plea Agreement with the government,[2] in which he waived his right "to file an appeal or otherwise challenge, by petition pursuant to 28 U.S.C. § 2255 or any other provision, the conviction or sentence in the event that the Court imposes a term of imprisonment of 272 months or below."[3]  Plea Agreement ¶ 5.  Petitioner further waived his right to challenge the facts to which he stipulated and "to raise on

---

[2]    At the beginning of the plea hearing, before Petitioner pled guilty, the Court allowed for a brief recess so that Petitioner could continue consulting with his attorney about the Plea Agreement.  *See* Plea Tr. at 2–14.

[3]    Although the Plea Agreement carved out an exception to the appeal and collateral attack waiver where such challenge is based on a claim of ineffective assistance of counsel, *see* Plea Agreement ¶ 5, Petitioner raises no such claim here, *see generally* ECF No. 158.

appeal or on collateral review any argument that . . . [his] admitted conduct does not fall within the scope of the statutes." *Id.* ¶¶ 2, 5.  On June 24, 2024, the Court sentenced Petitioner to a total of 132 months in prison, which fell below the 272-month threshold and therefore triggered the appeal and collateral attack waiver.  *See* ECF No. 155.  Accordingly, Petitioner did not appeal his conviction or sentence.

## LEGAL STANDARD

### I.    Section 2255

Section 2255 allows a person in federal custody to "move the court which imposed the sentence to vacate, set aside or correct the sentence."  28 U.S.C. § 2255(a).  However, such relief is generally only available where there was "a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice."  *Cuoco v. United States*, 208 F.3d 27, 30 (2d Cir. 2000).

Section 2255 is no substitute for a direct appeal.  *See Gupta v. United States*, 913 F.3d 81, 84 (2019) ("[A] collateral challenge may not do service for an appeal.").  Where "a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either cause" for the procedural default and "actual prejudice," or that he is "actually innocent."  *Bousley v. United States*, 523 U.S. 614, 622 (1998).  To prevail on an actual innocence claim, a petitioner must demonstrate that "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Id.* at 623.  And "[i]t is important to note . . . that actual innocence means factual innocence, not mere legal insufficiency."  *Id.*

3

Where a petitioner brings a Section 2255 motion *pro se*, the Court must construe the submission liberally and interpret it to "raise the strongest arguments that [it] suggest[s]." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006).

## II.    Guilty Plea

Relatedly, the Supreme Court has "strictly limited the circumstances under which a guilty plea may be attacked on collateral review." *Bousley*, 523 U.S. at 621. "This is both because of the broad interest in finality that attends a criminal judgment . . . and the general precept that pleas, which are considered an admission of all the elements of the crime, are not ordinarily subject to collateral attack." *Tavarez v. United States*, 81 F.4th 234, 239 (2d Cir. 2023). A petitioner may, however, "seek collateral relief to challenge the constitutional validity of a guilty plea where a subsequent substantive constitutional or statutory holding creates a significant risk that a defendant stands convicted of an act that the law does not make criminal." *Id.* Again, however, "where such a claim was not raised on direct review the defendant [must] first demonstrate either cause and actual prejudice . . . or that he is actually innocent." *Id.*

## DISCUSSION

## I.    Waiver

Petitioner's Section 2255 motion is barred by his Plea Agreement, in which he waived his right "to file an appeal or otherwise challenge, by petition pursuant to 28 U.S.C. § 2255 or any other provision, the conviction or sentence in the event that the Court imposes a term of imprisonment of 272 months or below." Plea Agreement ¶ 5. The Court sentenced Petitioner to 132 months in prison, which triggered the collateral attack and appeal waiver. *See* ECF No. 155. And even if that waiver were not triggered, Petitioner waived his right to challenge the facts to

4

which he stipulated and "to raise on appeal or on collateral review any argument that . . . [his]

admitted conduct does not fall within the scope of the statutes." *Id.* ¶¶ 2, 5.

"A waiver of the right to collaterally attack a conviction is presumptively enforceable."

*Cook v. United States*, 84 F.4th 118, 122 (2d Cir. 2023). There are five circumstances in which a

waiver will not be enforced, but Petitioner suggests only one—that his waiver "was not made

knowingly, voluntarily, and competently." *Id.*; *see* ECF No. 163 at 3–4 (Petitioner's Reply).

Specifically, Petitioner argues that "[a]t no point did [he] knowingly and intelligently waive his

right to assert actual innocence. The plea colloquy did not adequately inform him of the

implications of waiving such a defense." ECF No. 163 at 4. Petitioner's argument, however, is

belied by the record of the plea colloquy:

> THE COURT: And at trial you would be presumed innocent and
> the Government would have to prove your guilt beyond a
> reasonable doubt. Do you understand that?
>
> MR. SMITH: Yes.
>
> . . .
>
> THE COURT: And by entering a plea of guilty, if I accept your
> plea of guilty, there will be no trial and you will have waived and
> given up your right to a trial, as well as those rights that I just
> described that you have if you went to trial. Do you understand
> that?
>
> MR. SMITH: Yes.
>
> THE COURT: And there will be no further trial of any kind and
> no right of appeal from the judgment of guilty. I will simply enter

a judgment of guilty on the basis of your guilty plea.  Do you understand that?

MR. SMITH:  Yes.

. . .

THE COURT:  Mr. Smith . . . did you, in fact, sign the plea agreement here in court today?

MR. SMITH:  Yes.

THE COURT:  And did you have an opportunity to read and discuss that agreement with your attorneys before you signed it?

MR. SMITH:  Yes.

THE COURT:  And did you have sufficient time to review it with your attorney?

MR. SMITH:  Yes.

THE COURT:  And do you understand the plea agreement and how it works?

MR. SMITH:  Yes.

. . .

THE COURT:  Now, do you also understand that under some circumstances you or the Government may have the right to appeal any sentence that I impose, but that in this case because of the plea

> agreement, you have agreed that you will not appeal any sentence that is less than 272 months?  Do you understand that?[4]
>
> MR. SMITH:  Yes.
>
> . . .
>
> THE COURT:  Now, Mr. Smith, are you making this plea of guilty voluntarily and of your own free will?
>
> MR. SMITH:  Own free will.

Plea Tr. at 24–27, 36–37; *see also id.* at 43–44 (finding "that Mr. Smith is fully competent and capable of entering an informed plea").

Thus, the Court ensured that Petitioner "had read and signed the agreement, the terms of which included an express waiver of any and all rights . . . to appeal or collaterally attack his conviction and any sentence, so long as the sentence imposed fell within the sentencing range stipulated by the parties." *Cook*, 84 F.4th at 123.  The Court further confirmed that Petitioner "had talked with his lawyer about the plea agreement" and that there was "no evidence indicating that [Petitioner was] coerced or misunderstood any of the relevant facts." *Id.*  The Court therefore finds that Petitioner pled guilty and waived his right to bring this petition knowingly, voluntarily, and competently, which renders the waiver enforceable.  And even if Petitioner had

---

[4]    The Court "described the waiver as one that relinquished the right to collaterally attack any sentence imposed below a certain threshold, without mentioning that the waiver also prohibited him from challenging his underlying conviction." *Cook*, 84 F.4th at 123.  However, that "did not inject ambiguity into the plea agreement's otherwise clear terms," *id.*, especially because the Court had previously advised Petitioner he would have "no right of appeal from the judgment of guilty" after entering the guilty plea, Plea Tr. at 26, and ensured that Petitioner had sufficient opportunity to review the Plea Agreement with his attorney and understood its terms, *see id.* at 27.

not waived his right to bring these claims, they are procedurally barred because he did not raise

them on direct appeal.[5]  *See Bousley*, 523 U.S. at 622.

## II.    Actual Innocence

Nevertheless, "a credible showing of actual innocence may allow [Petitioner] to pursue

his constitutional claims . . . on the merits notwithstanding the existence of a procedural bar to

relief."  *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013).  "This rule, or fundamental

miscarriage of justice exception, is grounded in the equitable discretion of habeas courts to see

that federal constitutional errors do not result in the incarceration of innocent persons."  *Id.*

Here, Petitioner's claim of actual innocence is based on the argument that he did not

physically, or constructively, possess a firearm, and he is therefore actually innocent of the

§ 924(c) offense—brandishing a firearm during a crime of violence.  ECF No. 158 at 8.

However, as the government points out, a defendant may be properly convicted under § 924(c)

without personally possessing a firearm under an aiding and abetting theory of liability.  ECF

No. 162 at 6.

Aiding and abetting liability "requires both an affirmative act furthering the underlying

offense and an intent to facilitate that offense's commission."  *United States v. Robinson*, 799

F.3d 196, 200 (2d Cir. 2015).  "[T]he affirmative act requirement is met when the defendant

facilitates any element of the underlying offense . . . even if the act did not specifically facilitate

the use of the firearm."  *Id.*

During Petitioner's plea allocution, he admitted that "in furtherance of the assault, [he]

aided and abetted the possession and in [sic] brandish of a gun.  [He] aided and abetted by

---

[5]      Petitioner does not argue that he can overcome the procedural bar by demonstrating cause
and actual prejudice, *see generally* ECF No. 158, but he does argue that he is actually innocent,
which the Court addresses *infra*.

borrowing a car that was used in the assault." Plea Tr. at 38–39. Because "the affirmative act requirement [of aiding and abetting liability] is met when the defendant facilitates any element of the underlying offense," Petitioner's actions—driving the car to meet a fellow Real Ryte member and a Real Ryte associate and riding in the car to Manhattan to carry out the shooting—satisfy that requirement.[6] *Robinson*, 799 F.3d at 200.

The intent requirement of aiding and abetting liability "is stricter than the facilitation requirement in that the intent must go to the specific and entire crime charged—so here, to the full scope (predicate crime plus gun use) of § 924(c)." *Id.* For the intent requirement to be satisfied, Petitioner must have had "advance knowledge" that a firearm would be used during the commission of the crime. *Rosemond v. United States*, 572 U.S. 65, 78 (2014). Put differently, Petitioner must have had "knowledge at a time [he] [could] do something with it—most notably, opt to walk away." *Id.*

Here, Petitioner's plea allocution demonstrates that he had the requisite intent for both brandishing a firearm and the predicate crimes of violence—attempted murder in-aid-of racketeering and assault in-aid-of racketeering (Counts 3 and 4 of the Superseding Indictment, respectively, *see* ECF No. 64 at 5–6):

> THE COURT:  And then with respect to brandishing the firearm,
>
> did you agree – I think you indicated that you were involved in

---

[6]     Petitioner also stipulated in his Plea Agreement that "he aided and abetted the assault . . . with a firearm for the purpose of maintaining and increasing [his] position" in the gang, and "he aided and abetted the use, carrying, and brandishing of a firearm during and in relation to the crimes charge[d] in Counts Three and Four of the Superseding Indictment"—attempted murder in-aid-of racketeering and assault in-aid-of racketeering, respectively—the predicate offenses for the § 924(c) conviction. Plea Agreement ¶ 2; ECF No. 64 at 5–6.

obtaining from another person a rental car that was used to drive from Brooklyn to Manhattan, is that correct?

MR. SMITH:  Yes.

THE COURT:  And that was on the day . . . when the individual that's referred to in the Indictment as John Doe Number 2, when he was shot, correct?

MR. SMITH:  Yes.

THE COURT:  And you were in that car at the time that another individual in the car with you shot the individual who has been referred to as John Doe Number 2, correct?

MR. SMITH:  Yes.

. . .

THE COURT:  And you knew when you drove from Brooklyn to Manhattan that the reason you were going there was for this other individual to shoot someone, correct?

MR. SMITH:  Yes.

Plea Tr. at 39–40.  Rather than "opt[ing] to walk away," Petitioner, aware that a firearm would be used in the commission of the crimes, procured the rental car and went along for the ride. *Rosemond*, 572 U.S. at 78.  Such conduct is sufficient to support a § 924(c) conviction under an aiding and abetting theory of liability.

Petitioner has therefore failed to demonstrate actual innocence.  In other words, Petitioner has not shown that "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him" of the § 924(c) offense.[7]  *Bousley*, 523 U.S. at 623.

### III.    Crime of Violence

Finally, Petitioner seeks to vacate his § 924(c) conviction on the basis that his predicate offenses, Counts 3 and 4 of the Superseding Indictment, are not crimes of violence.  *See* Plea Tr. at 21; ECF No. 158 at 5–6, 8.  Even if this claim were not waived and procedurally barred, it fails on the merits.

As discussed, Counts 3 and 4, to which Petitioner did not plead guilty, charged Petitioner with attempted murder in-aid-of racketeering and assault in-aid-of racketeering, respectively. *See* ECF No. 64 at 5–6.  Both counts were premised on violations of New York State law, specifically New York Penal Law ("N.Y.P.L.") §§ 125.25(1), 110.00, and 20.00 for Count 3, and N.Y.P.L. §§ 120.05(2) and 20.00 for Count 4.  The Court dismissed Counts 3 and 4 after imposing Petitioner's sentence.  *See* ECF No. 157 at 58 (Sentencing Transcript).

Petitioner argues that because he himself did not carry out the attempted murder and assault, those offenses do not constitute crimes of violence as required by § 924(c).  ECF No. 158 at 5–6.  However, "aiding and abetting a crime of violence suffices for a § 924(c) conviction," *Gomez v. United States*, 87 F.4th 100, 110 (2d Cir. 2023), and attempted murder in violation of N.Y.P.L. § 125.25(1), as well as assault in violation of N.Y.P.L. § 120.05(2), are valid predicate crimes of violence, *United States v. Pastore*, 83 F.4th 113, 119–21 (2d Cir. 2023),

---

[7]     The government asserts liability under *Pinkerton v. United States*, 328 U.S. 640 (1946) as an alternative theory.  ECF No. 162 at 7–8.  However, because Petitioner's plea allocution was sufficient to establish aiding and abetting liability, the Court need not address the applicability of *Pinkerton*.

11

*aff'd sub nom.*, *Delligatti v. United States*, 604 U.S. 423 (2025); *see also United States v. Laurent*, 33 F.4th 63, 92 (2d Cir. 2022). "If the underlying offense is a crime of violence, it is a predicate for § 924(c) liability; if the defendant aided and abetted that underlying offense, he is guilty of the underlying offense." *Gomez*, 87 F.4th at 110.

A conviction under § 924(c) "requires legally sufficient proof that the predicate crime of violence . . . was committed, but does not require a conviction for that predicate crime." *Johnson v. United States*, 779 F.3d 125, 126 (2d Cir. 2015). Here, although Counts 3 and 4 were dismissed, Petitioner admitted that he "agreed to commit crimes, including assault"; "in furtherance of the assault, [he] aided and abetted the possession and in [sic] brandish of a gun"; "[he] aided and abetted by borrowing a car that was used in the assault"; he agreed he would, "with others, make an attempt on the life of an individual related to" his gang activity; and he obtained a car and rode from Brooklyn to Manhattan for the purpose of "shoot[ing] someone." Plea Tr. at 38–40; *see also* Plea Agreement ¶ 2 (similar). Therefore, there is legally sufficient proof that Petitioner aided and abetted the predicate crimes of violence, which, in turn, adequately support his § 924(c) conviction.[8] *See Johnson*, 779 F.3d at 126.

---

[8] The Court further notes that Petitioner identifies no subsequent substantive law that creates a significant risk that he was convicted of an act that is no longer unlawful sufficient to challenge his guilty plea. *See Tavarez*, 81 F.4th at 239. Although Petitioner cites to *United States v. Taylor*, 596 U.S. 845 (2022), *United States v. Davis*, 588 U.S. 445 (2019), and *United States v. McCoy*, 58 F.4th 72 (2d Cir. 2023), *see* ECF No. 158 at 6, those cases were not decided subsequent to the entry of his guilty plea, *see Tavarez*, 81 F.4th at 239.

In any event, *Taylor*, *Davis*, and *McCoy* have no bearing on Petitioner's claims. First, in *Taylor*, the Supreme Court held that attempted Hobbs Act robbery, which is not at issue here, does not qualify as a crime of violence under § 924(c). 596 U.S. at 860. The Second Circuit made clear that even after *Taylor*, attempted murder in violation of N.Y.P.L. § 125.25(1), one of Petitioner's predicate offenses, is still a crime of violence. *See Pastore*, 83 F.4th at 120 ("[T]here can be no doubt that attempt to commit second-degree murder under New York law is itself categorically a crime of violence. The Supreme Court's recent decision in *Taylor* does not alter this conclusion."). Second, in *Davis*, the Supreme Court held that part of § 924(c)'s

**CONCLUSION**

For the foregoing reasons, Petitioner's Section 2255 motion is DENIED.[9]  The Clerk of

Court is respectfully directed to enter judgment consistent with this Order, close related civil

case no. 25-cv-07192, mail the Order to Petitioner at his address of record, and note the mailing

on the docket.

SO ORDERED.

/s/ Hector Gonzalez
HECTOR GONZALEZ
United States District Judge

Dated:  Brooklyn, New York
May 7, 2026

---

definition of a crime of violence—the "residual clause"—was unconstitutional.  588 U.S. at 470.
But Petitioner's predicate crimes are crimes of violence under the other part of the definition—
the "elements clause"—making *Davis* inapplicable.  *See Pastore*, 83 F.4th at 121–22; *Laurent*,
33 F.4th at 92.  Third, and finally, in *McCoy*, the Second Circuit applied *Taylor* to reverse the
defendants' convictions under § 924(c) for brandishing firearms during and in relation to
attempted Hobbs Act robberies, because after *Taylor*, attempted Hobbs Act robbery no longer
qualifies as a crime of violence under § 924(c).  58 F.4th at 73–74.  Again, however, Petitioner's
case does not involve attempted Hobbs Act robbery.  Thus, even if these cases were decided after
Petitioner's guilty plea, they do not alter the lawfulness of his § 924(c) conviction.

[9]      Petitioner also requests appointment of counsel and an evidentiary hearing.  *See* ECF
No. 158 at 17.  Because the Court finds that the claims raised in Petitioner's Section 2255
petition are waived, procedurally barred, and in any event, meritless, the Court similarly denies
these additional requests for relief.

13